## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,

     Plaintiff,

     v.

T-MOBILE USA, INC.; T-MOBILE US, INC.,

     Defendants.

Civil Action No. 13-cv-1632-LPS

JURY TRIAL DEMANDED

## THIRD AMENDED COMPLAINT

Pursuant to the Court's Order dated March 26, 2013 (Dkt. 59), Plaintiff Intellectual Ventures I LLC, for its Third Amended Complaint against T-Mobile USA, Inc. and T-Mobile US, Inc. (d/b/a/ T-Mobile US, Inc.) (collectively, "T-Mobile") hereby alleges as follows:

## PARTIES

1.      Intellectual Ventures I is a Delaware limited liability company with its principal place of business located in Bellevue, Washington.

2.      Defendant T-Mobile US, Inc., formerly named MetroPCS Communications, Inc., is a Delaware corporation, with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.  T-Mobile US, Inc. is the U.S. wireless operation of Deutsche Telekom AG.

3.      Defendant T-Mobile USA, Inc., a wholly-owned subsidiary of T-Mobile US, Inc., is a Delaware corporation, with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

4.      Upon information and belief, on April 30, 2013 MetroPCS Wireless, Inc. ("Metro PCS Wireless") was merged with and into T-Mobile USA, Inc., with T-Mobile USA, Inc. as the surviving entity.

## NATURE OF THE ACTION

5.      This is a civil action for the infringement of U.S. Patent No. RE 41,490, U.S. Patent No. 5,790,793, U.S. Patent No. 8,078,200, U.S. Patent No. 7,450,957, U.S. Patent No. 5,768,509, U.S. Patent No. 5,960,032, U.S. Patent No. 6,131,032, U.S. Patent No. 6,170,073, U.S. Patent No. 7,496,674, U.S. Patent No. 5,557,677, U.S. Patent No. 6,977,944, U.S. Patent No. 7,136,392, U.S. Patent No. 7,343,011, and U.S. Patent No. RE 43,306 (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*.

7.      This Court has personal jurisdiction over T-Mobile because it has committed acts of infringement in this District in violation of 35 U.S.C. § 271, and has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are used and sold in this District.  These acts have caused and continue to cause injury to Intellectual Ventures I within the District.  T-Mobile derives substantial revenue from the sale of infringing services and products distributed within the District, and/or expects or should reasonably expect its actions to have consequences within the District, and derives substantial revenue from interstate and international commerce.

8.      T-Mobile maintains places of business within the District from which they sell products or services to residents of the District.  Additionally, T-Mobile provides telecommunications services to customers through base stations, switching equipment and other components of their telecommunications networks, which are located in the District.

9.      Further, T-Mobile is subject to this Court's jurisdiction by virtue of its incorporation in Delaware and its availing itself of the laws and protections of this District.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

11.      Paragraphs 1-10 are reincorporated by reference as if fully set forth herein.

12.      On August 10, 2010, United States Patent No. RE 41,490 ("the '490 Patent"), titled "Transmission of Multimedia Messages Between Mobile Station Terminals," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The '490 Patent is attached hereto as Exhibit A.

13.      Intellectual Ventures I owns all substantial right, title, and interest in the '490 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

14.      On August 4, 1998, United States Patent No. 5,790,793 ("the '793 Patent"), titled "Method and system to create, transmit, receive and process information, including an address to further information," was duly and lawfully issued by the PTO.  The '793 Patent is attached hereto as Exhibit B.

15.      Intellectual Ventures I owns all substantial right, title, and interest in the '793 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

16.     On November 11, 2008, United States Patent No. 7,450,957 ("the '957 Patent"), titled "System and method for blocking the use of a service in a telecommunication system," was duly and lawfully issued by the PTO.  The '957 Patent is attached hereto as Exhibit C.

17.     Intellectual Ventures I owns all substantial right, title, and interest in the '957 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

18.     On December 13, 2011, United States Patent No. 8,078,200 ("the '200 Patent"), titled "System and method for blocking the use of a service in a telecommunication system," was duly and lawfully issued by the PTO.  The '200 Patent is attached hereto as Exhibit D.

19.     Intellectual Ventures I owns all substantial right, title, and interest in the '200 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

20.     On June 16, 1998, United States Patent No. 5,768,509 ("the '509 Patent"), titled "Short Message Server Without Local Customer Database," was duly and lawfully issued by the PTO.  The '509 Patent is attached hereto as Exhibit E.

21.     Intellectual Ventures I owns all substantial right, title, and interest in the '509 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

22.     On September 28, 1999, United States Patent No. 5,960,032 ("the '0032 Patent"), titled "High Speed Data Transmission Using Expanded Bit Durations in Multiple Parallel Coded Data Streams," was duly and lawfully issued by the PTO.  The '0032 Patent is attached hereto as Exhibit H.

23.     Intellectual Ventures I owns all substantial right, title, and interest in the '0032 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

24.     On October 10, 2000, United States Patent No. 6,131,032 ("the '1032 Patent"), titled "Method and Apparatus for Monitoring Users of a Communications System," was duly and lawfully issued by the PTO.  The '1032 Patent is attached hereto as Exhibit I.

25.     Intellectual Ventures I owns all substantial right, title, and interest in the '1032 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

26.     On January 2, 2001, United States Patent No. 6,170,073 ("the '073 Patent"), titled "Method and Apparatus for Error Detection in Digital Communications," was duly and lawfully issued by the PTO.  The '073 Patent is attached hereto as Exhibit J.

27.     Intellectual Ventures I owns all substantial right, title, and interest in the '073 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

28.     On February 24, 2009, United States Patent No. 7,496,674 ("the '674 Patent"), titled "System, Method, and Base Station Using Different Security Protocols," was duly and lawfully issued by the PTO.  The '674 Patent is attached hereto as Exhibit K.

29.     Intellectual Ventures I owns all substantial right, title, and interest in the '674 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

30.     On September 17, 1996, United States Patent No. 5,557,677 ("the '677 Patent"), titled "Method and arrangement for communication of information," was duly and lawfully issued by the PTO.  The '677 Patent is attached hereto as Exhibit L.

31.     Intellectual Ventures I owns all substantial right, title, and interest in the '677 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

32.     On December 20, 2005, United States Patent No. 6,977,944 ("the '944 Patent"), titled "Transmission protection for communications networks having stations operating with different modulation formats," was duly and lawfully issued by the PTO.  The '944 Patent is attached hereto as Exhibit M.

33.     Intellectual Ventures I owns all substantial right, title, and interest in the '944 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

34.     On November 14, 2006, United States Patent No. 7,136,392 ("the '392 Patent"), titled "System and method for ordering data messages having differing levels of priority for transmission over a shared communication channel," was duly and lawfully issued by the PTO. The '392 Patent is attached hereto as Exhibit N.

35.     Intellectual Ventures I owns all substantial right, title, and interest in the '392 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

36.     On March 11, 2008, United States Patent No. 7,343,011 ("the '011 Patent"), titled "System and method for ordering data messages having differing levels of priority for

transmission over a shared communication channel," was duly and lawfully issued by the PTO. The '011 Patent is attached hereto as Exhibit O.

37.     Intellectual Ventures I owns all substantial right, title, and interest in the '011 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

38.     On April 10, 2012, United States Patent No. RE 43,306 ("the '306 Patent"), titled "Transmission of Multimedia Messages Between Mobile Station Terminals," was duly and lawfully issued by the PTO.  The '306 Patent is attached hereto as Exhibit S.

39.     Intellectual Ventures I owns all substantial right, title, and interest in the '306 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

## FACTUAL BACKGROUND

### Intellectual Ventures

40.     Intellectual Ventures Management, LLC ("Intellectual Ventures") was founded in 2000.  Since its founding, Intellectual Ventures has been deeply involved in the business of invention.  Intellectual Ventures creates inventions and files patent applications for those inventions; collaborates with others to develop and patent inventions; and acquires and licenses patents from individual inventors, universities, and other institutions.  A significant aspect of Intellectual Ventures' business is managing Intellectual Ventures I.

41.     Intellectual Ventures' business includes purchasing important inventions from individual inventors and institutions and then licensing the inventions to those who need them. Through this business, Intellectual Ventures allows inventors to reap a financial reward from their innovations, a frequently difficult task for individual inventors.  To date, Intellectual

Ventures has built a portfolio of more than 35,000 assets, and more than 3,000 of those patents and patent applications are the result of Intellectual Ventures' own invention efforts, both in-house and with Intellectual Ventures' inventor network. Intellectual Ventures has paid individual inventors more than $400 million for their inventions. Intellectual Ventures, in turn, has earned more than $2 billion by licensing these patents to some of the world's most innovative and successful technology companies who continue to use them to make computer equipment, software, semiconductor devices, consumer products, and a host of other products.

42.     Intellectual Ventures also develops its own inventions. Intellectual Ventures has a staff of scientists and engineers who develop ideas in a broad range of fields, including agriculture, computer hardware, life sciences, medical devices, semiconductors, and software. Intellectual Ventures has invested millions of dollars developing such ideas and has filed hundreds of patent applications on its inventions every year, making it one of the top patent filers in the world. Intellectual Ventures also has invested in laboratory facilities to assist with the development and testing of new ideas.

43.     Intellectual Ventures also develops inventions by collaborating with inventors and research institutions around the world. For example, Intellectual Ventures has developed inventions by selecting a technical challenge, requesting proposals for inventions to solve the challenge from inventors and institutions, selecting the most promising ideas, rewarding the inventors and institutions for their contributions, and filing patent applications on the ideas. Intellectual Ventures has invested millions of dollars in this way and has created a network of more than 3000 inventors worldwide.

## The National Telecommunications Network

44.     T-Mobile  is in the business of selling and offering for sale mobile phones and wireless phone services to customers throughout the United States, including the state of Delaware.

45.     Other wireless service carriers and related entities offer similar products and services, including AT&T Mobility LLC (d/b/a AT&T Mobility), AT&T Mobility II LLC (d/b/a AT&T Mobility), New Cingular Wireless Services, Inc. (d/b/a AT&T Mobility) (AT&T Mobility LLC, AT&T Mobility II LLC, and New Cingular Wireless Services, Inc. collectively, "AT&T Mobility"), SBC Internet Services, Inc. (d/b/a AT&T Entertainment Services, AT&T Internet Services, and Pacific Bell Internet Services), Wayport, Inc., (d/b/a AT&T Wi-Fi Services); Nextel Operations, Inc. ("Nextel"), Sprint Spectrum L.P. (d/b/a/ Sprint PCS) ("Sprint PCS") (Nextel and Sprint PCS collectively, "Sprint"); United States Cellular Corporation, and Telephone and Data Systems, Inc., (United States Cellular Corporation and Telephone and Data Systems, Inc., collectively "U.S. Cellular").  As used herein, "Carriers" will refer to AT&T Mobility, T-Mobile, Sprint, and U.S. Cellular.

46.     Collectively, the Carriers have created an integrated national network for the provision of wireless telecommunication services to their customers.  Through bilateral agreements, participation in standard bodies and cooperation in the adoption of compatible technology, the Carriers have created a national telecommunications network allowing customers of each Carrier to communicate with each other over a vast wireless network.  The national wireless network is, in effect, one giant data communications network, from which each of the Carriers gains significant advantage and revenue.

47.     The Carriers have entered into a series of inter-carrier agreements through which they act as the agents for each other, and are contractually obligated to each other, in connection

with the provision of wireless telecommunication services and have jointly created an infringing system.  By way of example:

48.     AT&T Wireless, Cingular Wireless (on information and belief, entities which became AT&T Mobility), Nextel, Sprint PCS, T-Mobile, and U.S. Cellular agreed to create a system for the transfer of MMS messages through a national inter-carrier system.  An MMS message is a multimedia message, containing a picture, video or multimedia attachment, and which can be sent from a mobile phone to another mobile phone, and there are billions of such messages sent each year.

49.     CTIA-The Wireless Association® is an international nonprofit membership organization that has represented the wireless communications industry since 1984.  *See* http://www.ctia.org/aboutCTIA/.   Pursuant to guidelines agreed to by the Carriers, they created a system to enable the transfer of "phone number addressed mobile-to-mobile MMS messages across participating wireless carrier networks in the U.S." Inter-Carrier MMS Messaging Guidelines, Feature Set & Interfaces, Revision: 1.0, Date: October 21, 2004 (attached as Exhibit P) at p.6.

50.     As stated in the Inter-Carrier MMS Messaging Guidelines:  "The purpose of MMS Interoperability is to ensure that carriers can pass mobile originated Multimedia Messages (MMS) across participating carriers' networks.  The group's objective is to identify and define the involved interfaces, and to agree upon a common feature set that will be supported by all participating carriers." *Id.*

51.     On July 7, 2005, T-Mobile USA Inc., Cingular Wireless L.L.C., and Sprint PCS announced that their networks were now MMS interoperable.  "T-Mobile USA Inc. users can exchange pictures and video clips with subscribers of both Cingular Wireless L.L.C. and Sprint

PCS, the three carriers announced." *See T-Mobile USA, Cingular make MMS interoperability announcements*, located at http://www.rcrwireless.com/article/20050707/sub/t-mobile-usa-cingular-make-mms-interoperability-announcements/ (attached as Exhibit Q).

52.     In a press release on July 7, 2005 T-Mobile explained further the agreement with Sprint: "It's called Multimedia Messaging Services (MMS) interoperability. It allows T-Mobile and Sprint customers to send and receive picture messages across carriers." *See T-Mobile USA and Sprint Make it a Snap for Customers to Share Pictures and Text Messages - Sprint and T-Mobile Customers can use Wireless Phones to Exchange Picture Messages*, T-Mobile press release, July 7, 2005, located at http://newsroom.t-mobile.com/articles/t-mobile-Sprint-MMS (attached as Exhibit R).

53.     Upon information and belief, AT&T Mobility has agreed with the other Carriers to deliver their MMS messages to AT&T Mobility's customers pursuant to the CTIA Guidelines.

54.     Upon information and belief, U.S. Cellular has agreed with the other Carriers to deliver their MMS messages to U.S. Cellular's customers pursuant to the CTIA Guidelines.

55.     The Carriers act as agents for each other, and are contractually obligated to each other, in the transmission of inter-carrier MMS messages.  Each wireless carrier thus facilitates and encourages the others to engage in infringing acts in relation to the transfer of MMS messages.

56.     Upon information and belief, the Carriers transfer traffic between each other, thereby acting as agents for the completion of calls pursuant to their contractual obligations in their roaming agreements.  In particular, upon information and belief, starting at least as early as April 2003, T-Mobile and AT&T Mobility entered into one or more roaming agreement which allow T-Mobile wireless customers to complete calls through the AT&T Mobility's network, and

AT&T Mobility customers to complete calls through the T-Mobile wireless network.  Each wireless carrier which completes calls for the other acts as an agent for the other, and fulfills their contractual obligations, in completing the calls.

57.     Upon information and belief, the Carriers share amongst each other phone numbers and identification information which allows them to identify whether a call originating in one carrier's network is to be completed in another carrier's network and routing information which allows the smooth transfer of calls, SMS text messages and MMS messages between networks.  Carriers update this information on a regular basis to insure the smooth transfer of calls between carriers.

58.     Upon information and belief, the Carriers have agreed bilaterally or through participation in standards bodies to use Intellectual Ventures I's patented technology in violation of Intellectual Ventures I's patent rights.

## COUNT I

### (Infringement of the '490 Patent)

59.     Paragraphs 1-58 are incorporated by reference as if fully restated herein.

60.     T-Mobile, either alone or in conjunction with others, has infringed the '490 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that use email messages to encapsulate multimedia messages for transfer between carriers.

61.     Prior to April 30, 2013, MetroPCS Wireless, either alone or in conjunction with others, has infringed the '490 Patent, literally and/or under the doctrine of equivalents, by using

or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's wireless messaging services, including, but not limited to, wireless messaging services that use email messages to encapsulate multimedia messages for transfer between carriers.

62.     The '490 Patent covers, among other things, a method for the transfer of MMS messages between carriers, and the creation of an apparatus consisting of collaborative inter-carrier messaging servers at different carriers.  Upon information and belief, the Carriers have agreed bilaterally through contract and through participation in standards bodies to use the patented technology in violation of Intellectual Ventures I's patent rights.  Through these agreements T-Mobile has infringed, and has induced other carriers to infringe, the '490 Patent in violation of 35 U.S.C. § 271(b), T-Mobile having had knowledge of the '490 Patent since at least the filing of the Original Complaint and the specific intent to encourage such infringement.

63.     By way of non-limiting example, when a T-Mobile subscriber sends a multimedia message to a subscriber of another Carrier, T-Mobile infringes the '490 Patent.  T-Mobile performs certain steps of the claimed method to process the multimedia message for inter-carrier transmission, and induces the second Carrier to perform the remaining steps for purposes of receiving and processing the multimedia message received from T-Mobile's network.

64.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '490 Patent.

## COUNT II

### (Infringement of the '793 Patent)

65.     Paragraphs 1-64 are incorporated by reference as if fully restated herein.

66.     T-Mobile has infringed the '793 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that create an address, such as a URL, for each MMS message and include the automated transfer of messages from an MMS server to a mobile unit.

67.     Prior to April 30, 2013, MetroPCS Wireless has infringed the '793 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's wireless messaging services, including, but not limited to, wireless messaging services that create an address, such as a URL, for each MMS message and include the automated transfer of messages from an MMS server to a mobile unit.

68.     On information and belief T-Mobile and AT&T Mobility are parties to a contractual "roaming" agreement that requires each party to process calls and messages for customers of the other party.  On information and belief, Sprint and U.S. Cellular are also parties to a contractual "roaming" agreement that requires each party to process calls and messages for customers of another party.

69.     By way of a non-limiting example, a phone T-Mobile provided to a customer can initiate practice of the claimed methods through use of a second Carrier's network, when the phone is in roaming mode on the second network.  T-Mobile and other Carriers with roaming agreements have infringed and have induced each other to infringe the '793 Patent in violation of 35 U.S.C. § 271(b), with T-Mobile having had knowledge of the '793 Patent since at least the filing of the Original Complaint and the specific intent to encourage such infringement.

14

70.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '793 Patent.

## COUNT III

### (Infringement of the '957 Patent)

71.     Paragraphs 1-70 are incorporated by reference as if fully restated herein.

72.     T-Mobile, either alone or in conjunction with others, has infringed the '957 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that block SMS and MMS messages.

73.     Prior to April 30, 2013, MetroPCS Wireless, either alone or in conjunction with others, has infringed the '957 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's wireless messaging services, including, but not limited to, wireless messaging services that block SMS and MMS messages.

74.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '957 Patent.

## COUNT IV

### (Infringement of the '200 Patent)

75.     Paragraphs 1-74 are incorporated by reference as if fully restated herein.

76.     T-Mobile has infringed the '200 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '200 patent

without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that block SMS and MMS messages.

77.     Prior to April 30, 2013, MetroPCS Wireless, has infringed the '200 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '200 patent without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's wireless messaging services, including, but not limited to, wireless messaging services that block SMS and MMS messages.

78.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '200 Patent.

## COUNT V

### (Infringement of the '509 Patent)

79.     Paragraphs 1-79 are incorporated by reference as if fully restated herein.

80.     T-Mobile has infringed the '509 Patent, literally and/or under the doctrine of equivalents, by making, using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that use a subscriber database to provide information to an SMS server.

81.     Prior to April 30, 2013, MetroPCS Wireless, has infringed the '509 Patent, literally and/or under the doctrine of equivalents, by making, using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's wireless messaging services, including, but not limited to,

wireless messaging services that use a subscriber database to provide information to an SMS server.

82.     T-Mobile has had knowledge of the '509 Patent since at least February 16, 2012, the filing date of the Original Complaint. Further, T-Mobile possesses and has possessed specific intent to encourage others, including its customers and end users, to use its wireless messaging services to directly infringe the '509 Patent. As a result, T-Mobile is an indirect infringer pursuant to 35 U.S.C. § 271(b).

83.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '509 Patent.

## COUNT VI

### (Infringement of the '0032 Patent)

84.     Paragraphs 1-82 are incorporated by reference as if fully restated herein.

85.     T-Mobile has infringed the '0032 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a).  Among the infringing services are cellular services that use spread spectrum channel coding.

86.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '0032 Patent.

## COUNT VII

### (Infringement of the '1032 Patent)

87.     Paragraphs 1-86 are incorporated by reference as if fully restated herein.

88.     T-Mobile has infringed the '1032 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in

violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's cellular services, including, but not limited to, cellular services that comply with the Communications Assistance for Law Enforcement Act ("CALEA"), including cellular services that create a master intercept list containing information on which calls should be monitored by various law enforcement agencies.

89.     Prior to April 30, 2013, MetroPCS Wireless has infringed the '1032 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's cellular services, including, but not limited to, cellular services that comply with the Communications Assistance for Law Enforcement Act ("CALEA"), including cellular services that create a master intercept list containing information on which calls should be monitored by various law enforcement agencies.

90.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '1032 Patent.

**COUNT VIII**

**(Infringement of the '073 Patent)**

91.     Paragraphs 1-90 are incorporated by reference as if fully restated herein.

92.     T-Mobile has infringed the '073 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's cellular services, including, but not limited to, cellular services that encode, decode, and error correct digital voice traffic.

18

93.    Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '073 Patent.

## COUNT IX

### (Infringement of the '674 Patent)

94.    Paragraphs 1-93 are incorporated by reference as if fully restated herein.

95.    T-Mobile has infringed the '674 Patent, literally and/or under the doctrine of equivalents, by making, using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are T-Mobile's cellular services, including, but not limited to, cellular services that implement LTE in wireless base stations.

96.    Prior to April 30, 2013, MetroPCS Wireless has infringed the '674 Patent, literally and/or under the doctrine of equivalents, by making, using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services are MetroPCS Wireless's cellular services, including, but not limited to, cellular services that implement LTE in wireless base stations.

97.    Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '674 Patent.

## COUNT X

### (Infringement of the '677 Patent)

98.    Paragraphs 1-97 are incorporated by reference as if fully restated herein.

99.    T-Mobile, either alone or in conjunction with others, has infringed or induced others to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '677 Patent by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '677

patent, without authority and in violation of 35 U.S.C. § 271(a) and (b).  Among such infringing

products or services are T-Mobile's mobile phones, enterprise and in-home access points, mobile

personal hotspots, and/or public hotspots either compliant with the IEEE 802.11(i) standard, or

practicing Wi-Fi Protected Access ("WPA") or Wi-Fi Protected Access II ("WPA2") encryption

or security techniques.

100.    T-Mobile's customers and end users have directly infringed, and continue to

directly infringe, the '677 patent through their use of T-Mobile's mobile phones, enterprise and

in-home access points, mobile personal hotspots, and/or public hotspots either compliant with the

IEEE 802.11(i) standard, or practicing Wi-Fi Protected Access ("WPA") or Wi-Fi Protected

Access II ("WPA2") encryption or security techniques.

101.    T-Mobile has had knowledge of the '677 Patent since at least February 16, 2012,

the filing date of the Original Complaint. Further, T-Mobile possesses and has possessed specific

intent to encourage others, including its customers and end users, to use its mobile phones,

enterprise and in-home access points, mobile personal hotspots, and/or public hotspots, to

directly infringe the '677 Patent. As a result, T-Mobile is an indirect infringer pursuant to 35

U.S.C. § 271(b).

102.    Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement

of the '677 Patent.

## COUNT XI

### (Infringement of the '944 Patent)

103.    Paragraphs 1-102 are incorporated by reference as if fully restated herein.

104.    T-Mobile, either alone or in conjunction with others, has infringed or induced

others to infringe the '944 Patent, literally and/or under the doctrine of equivalents, by making,

using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '944 patent without authority and in violation of 35 U.S.C. § 271(a) and (b). Among the infringing products and services are T-Mobile's mobile phones, public hotspots, mobile personal hotspots, and/or enterprise and in-home access points compliant with either the IEEE 802.11(g) or the IEEE 802.11(n) standards, and/or implementing a Clear-to-send-to-self ("CTS-to-self protocol").

105.    T-Mobile's customers and end users have directly infringed, and continue to directly infringe, the '944 patent through their use of T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots compliant with either the IEEE 802.11(g) or the IEEE 802.11(n) standards, and/or implementing a Clear-to-send-to-self ("CTS-to-self protocol").

106.    T-Mobile has had knowledge of the '944 Patent since at least February 16, 2012, the filing date of the Original Complaint. Further, T-Mobile possesses and has possessed specific intent to encourage others, including its customers and end users, to use its mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots, to directly infringe the '944 Patent. As a result, T-Mobile is an indirect infringer pursuant to 35 U.S.C. § 271(b).

107.    Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '944 Patent.

## COUNT XII

### (Infringement of the '392 Patent)

108.    Paragraphs 1-107 are incorporated by reference as if fully restated herein.

109.     T-Mobile, either alone or in conjunction with others, has infringed or induced others to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '392 Patent by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '392 patent, without authority and in violation of 35 U.S.C. § 271(a) and (b).  Among such infringing products or services are T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots compliant with the IEEE 802.11(e) standard, or certified by the Wi-Fi Alliance as 802.11(n) compliant, or otherwise implementing or practicing Wireless Multimedia Extensions ("Wi-Fi Multimedia" or "WMM") functionality.

110.     T-Mobile's customers and end users have directly infringed, and continue to directly infringe, the '392 patent through their use of T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots compliant with the IEEE 802.11(e) standard, or certified by the Wi-Fi Alliance as 802.11(n) compliant, or otherwise implementing or practicing Wireless Multimedia Extensions ("Wi-Fi Multimedia" or "WMM") functionality.

111.     T-Mobile has had knowledge of the '392 Patent since at least February 16, 2012, the filing date of the Original Complaint. Further, T-Mobile possesses and has possessed specific intent to encourage others, including its customers and end users, to use T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots, to directly infringe the '392 Patent. As a result, T-Mobile is an indirect infringers pursuant to 35 U.S.C. § 271(b).

112.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '392 Patent.

## COUNT XIII

### (T-Mobile's Infringement of the '011 Patent)

113.     Paragraphs 1-112 are incorporated by reference as if fully restated herein.

114.     T-Mobile, either alone or in conjunction with others, has infringed or induced others to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '011 Patent by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '011 patent, without authority and in violation of 35 U.S.C. § 271(a) and (b).  Among such infringing products or services are T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots either compliant with the IEEE 802.11(i) standard and able to implement TKIP encryption, or practicing WPA encryption or security techniques, or practicing WPA2 encryption or security techniques with TKIP encryption.

115.     T-Mobile's customers and end users have directly infringed, and continue to directly infringe, the '011 patent through their use of T-Mobile's mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots either compliant with the IEEE 802.11(i) standard and implementing TKIP encryption, or practicing WPA encryption or security techniques, or practicing WPA2 encryption or security techniques with TKIP encryption.

116.     T-Mobile has had knowledge of the '011 Patent since at least February 16, 2012, the filing date of the Original Complaint. Further, T-Mobile possesses and has possessed specific intent to encourage others, including its customers and end users to use its mobile phones, enterprise and in-home access points, mobile personal hotspots, and/or public hotspots, to directly infringe the '011 Patent. As a result, T-Mobile is an indirect infringer pursuant to 35 U.S.C. § 271(b).

117.    Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '011 Patent.

## COUNT XIV

### (Infringement of the '306 Patent)

118.    Paragraphs 1-117 are incorporated by reference as if fully restated herein.

119.    T-Mobile has infringed the '306 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '306 patent without authority and in violation of 35 U.S.C. § 271(a). Among the infringing products or services are T-Mobile's wireless messaging services, including, but not limited to, wireless messaging services that use email messages to encapsulate multimedia messages for transfer between carriers.

120.    Prior to April 30, 2013, MetroPCS Wireless has infringed the '306 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing in or into the United States products and/or processes falling within the scope of one or more claims of the '306 patent without authority and in violation of 35 U.S.C. § 271(a). Among the infringing products or services are MetroPCS Wireless's wireless messaging services, including, but not limited to, wireless messaging services that use email messages to encapsulate multimedia messages for transfer between carriers.

121.    On information and belief, T-Mobile, MetroPCS Wireless, and the other Carriers have entered into bi-lateral contracts and agreements to transfer MMS messages between themselves.

122.     The '306 Patent covers, among other things, a method for the transfer of MMS messages, and the creation of an apparatus consisting of collaborative inter-carrier messaging servers at different carriers.

123.     Through inter-carrier agreements, T-Mobile has infringed, and induced the other Carriers to infringe, the '306 Patent in violation of 35 U.S.C. § 271(b), T-Mobile having had knowledge of the '306 Patent and specific intent to encourage infringement since at least the filing of the Original Complaint.

124.     Intellectual Ventures I has suffered damage as a result of T-Mobile's infringement of the '306 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Intellectual Ventures I respectfully requests the following relief:

a)      A judgment that U.S. Patent Nos. RE 41,490; 5,790,793; 8,078,200; 7,450,957; 5,768,509; 5,960,032; 6,131,032; 6,170,073; 7,496,674; 5,557,677; 6,977,944; 7,136,392; 7,343,011; and RE 43,306 are valid and enforceable.

b)      A judgment that T-Mobile has infringed the '490 Patent;

c)      A judgment that T-Mobile has infringed the '793 Patent;

d)      A judgment that T-Mobile has infringed the '957 Patent;

e)      A judgment that T-Mobile has infringed the '200 Patent;

f)      A judgment that T-Mobile has infringed the '509 Patent;

g)      A judgment that T-Mobile has infringed the '0032 Patent;

h)      A judgment that T-Mobile has infringed the '1032 Patent;

i)      A judgment that T-Mobile has infringed the '073 Patent;

j)      A judgment that T-Mobile has infringed the '674 Patent;

k)      A judgment that T-Mobile has infringed the '677 Patent;

l)      A judgment that T-Mobile has infringed the '944 Patent;

m)      A judgment that T-Mobile has infringed the '392 Patent;

n)      A judgment that T-Mobile has infringed the '011 Patent;

o)      A judgment that T-Mobile has infringed the '306 Patent;

p)      An order enjoining T-Mobile and its officers, agents, servants and employees, privies, and all persons in active concert or participation with it, from further infringement of said patents;

q)      A judgment that Intellectual Ventures I be awarded all appropriate damages under 35 U.S.C. § 284 for T-Mobile's past infringement, and any continuing or future infringement of the Patents-in-Suit, up until the date such judgment is entered, including pre and post judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Intellectual Ventures I for T-Mobile's infringement, an accounting:

   i)      that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Intellectual Ventures I be awarded its reasonable attorneys' fees that it incurs in prosecuting this action

   ii)      that Intellectual Ventures I be awarded costs and expenses that it incurs in prosecuting this action; and

   iii)      that Intellectual Ventures I be awarded such further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Intellectual Ventures I hereby demands trial by jury on all claims and issues so triable.

DATED:  March 7, 2014

Respectfully submitted,

FARNAN LLP

By:  /s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com

OF COUNSEL:
Martin J. Black -- LEAD ATTORNEY
martin.black@dechert.com
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Jeffrey B. Plies
jeffrey.plies@dechert.com
DECHERT LLP
300 W. 6th Street
Suite 2010
Austin, TX 78701
(512) 394-3000

Stephen J. Akerley
stephen.akerley@dechert.com
Justin F. Boyce
justin.boyce@dechert.com
DECHERT LLP
2440 W. El Camino Real Suite 700
Mountain View, CA 94040-1499
(650) 813-4800

*Counsel for Plaintiff Intellectual Ventures I LLC*