**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1632-LPS |
| | : | |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1633-LPS |
| | : | |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1634-LPS |
| | : | |
| NEXTEL OPERATIONS, INC. and | : | |
| SPRINT SPECTRUM L.P., | : | |
| BOOST MOBILE, LLC, and | : | |
| VIRGIN MOBILE USA, L.P., | : | |
| | : | |
| Defendants | : | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1635-LPS |
| | : | |
| NEXTEL OPERATIONS, INC. and | : | |
| SPRINT SPECTRUM L.P., | : | |
| BOOST MOBILE, LLC, and | : | |
| VIRGIN MOBILE USA, L.P., | : | |
| | : | |
| Defendants | : | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1636-LPS |
| | : | |
| UNITED STATES CELLULAR CORPORATION, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1637-LPS |
| | : | |
| UNITED STATES CELLULAR CORPORATION, | : | |
| | : | |
| Defendant. | : | |

INTELLECTUAL VENTURES I LLC,           :
                                       :
        Plaintiff,                     :
                                       :
    v.                                 :   C.A. No. 15-800-LPS
                                       :
T-MOBILE USA, INC. and T-MOBILE US, INC., :
                                       :
        Defendants.                    :
                                       :

Joseph J. Farnan, III, Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Martin J. Black, DECHERT LLP, Philadelphia, PA
Jeffrey B. Plies, DECHERT LLP, Austin, TX
Stephen J. Akerley, Justin F. Boyce, DECHERT LLP, Mountain View, CA

        Attorneys for Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE
Josh Krevitt, Benjamin Hershkowitz, GIBSON, DUNN & CRUTCHER LLP, New York, NY
Mark N. Reiter, GIBSON, DUNN & CRUTCHER LLP, Dallas, TX
Brian M. Buroker, GIBSON, DUNN & CRUTCHER LLP, Washington, DC
Alison R. Watkins, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA
Eric T. Syu, Casey J. McCracken, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA
Matthew R. Harvey, GIBSON, DUNN & CRUTCHER LLP, Denver, CO

        Attorneys for Defendants T-Mobile USA, Inc. and T-Mobile US, Inc.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE
Brian C. Riopelle, David E. Finkelson, Kristen M. Calleja, Derek H. Swanson, Justin R. Lowery,
George B. Davis, Lyle D. Kossis, MCGUIRE WOODS LLP, Richmond, VA
Rachelle H. Thompson, MCGUIRE WOODS LLP, Raleigh, NC
Mark Varboncouer, Amy L. Signagio, MCGUIRE WOODS LLP, Chicago, IL
Justin W. Cook, MCGUIRE WOODS LLP, Dallas, TX

        Attorneys for Defendants Sprint Spectrum, L.P.; Nextel Operations, Inc.; Boost Mobile
        LLC; and Virgin Mobile USA, L.P.

Steven J. Fineman, Katharine L. Mowery, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE
Douglas I. Lewis, Savan N. Vaghani, John P. Wisse, Paul E. Veith, SIDLEY AUSTIN LLP, Chicago, IL
John P. Wisse, SIDLEY AUSTIN LLP, Dallas, TX
Ashish Nagdev, SIDLEY AUSTIN LLP, Palo Alto, CA

Attorneys for Defendant United States Cellular Corporation.

## MEMORANDUM OPINION

August 23, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are:

(i) Plaintiffs Intellectual Ventures I ("IV I") and Intellectual Ventures II's ("IV II," and collectively with IV I, "Plaintiffs" or "IV") motion for partial reconsideration (C.A. No. 13-1632-LPS D.I. 752)[1] of the Court's December 30, 2016 Memorandum Opinion granting Defendants' motion for judgment on the pleadings that certain claims of U.S. Patent Nos. 6,115,737 (the "'737 patent"), 8,078,200 (the "'200 patent"), and 7,450,957 (the "'957 patent") are patent-ineligible under 35 U.S.C. § 101 (D.I. 748) ("IV Motion"); and

(ii) Defendants T-Mobile USA, Inc. ("T-Mobile USA"); T-Mobile US, Inc. ("T-Mobile US," and collectively with T-Mobile USA, "T-Mobile"); Nextel Operations, Inc. ("Nextel"); Sprint Spectrum L.P. ("Sprint Spectrum"); Boost Mobile LLC ("Boost Mobile"); Virgin Mobile USA, L.P. ("Virgin Mobile," and collectively with Nextel, Sprint Spectrum, and Boost Mobile, "Sprint"); and United States Cellular Corporation ("U.S. Cellular," and collectively with T-Mobile and Sprint, "Defendants") motion for summary judgment that certain claims of U.S. Patent Nos. 5,960,032 (the "'0032 patent"), RE41,490 (the "'490 patent"), RE43,306 (the "'306 patent"), and 5,339,352 (the "'352 patent") are patent-ineligible under 35 U.S.C. § 101 (D.I. 772 at 24-30, 49-54, 84-91) ("Summary Judgment Motion").[2]

For the reasons set forth below, the Court will deny the IV Motion and will grant in part and deny in part Defendants' Summary Judgment Motion.

---

[1] Unless otherwise noted, all citations to the docket are to C.A. No. 13-1632-LPS.

[2] The Court will address the remainder of the issues presented in Defendants' Summary Judgment Motion in one or more separate opinions and/or orders.

## I. BACKGROUND

IV filed suit against T-Mobile and Sprint on February 16, 2012 and against U.S. Cellular on May 7, 2012, alleging infringement of 16 patents. (*See, e.g.*, C.A. No. 12-193-LPS D.I. 1, 20) IV's infringement allegations have since been reduced to 16 claims across seven patents: U.S. Patent No. 6,170,073 (the "'073 patent"),[3] the '0032 patent, the '490 patent, the '306 patent, U.S. Patent No. 5,790,793 (the "'793 patent"), the '352 patent, and U.S. Patent No. 5,557,677 (the "'677 patent").[4] (*See* D.I. 772 at 1) IV asserts the '0032 patent, '793 patent, '490 patent, and '306 patent against T-Mobile; the '793 patent, '490 patent, '306 patent, and '352 patent against Sprint; and the '490 patent and the '352 patent against U.S. Cellular. (*See* D.I. 768 at 2)

The '073 and '0032 patents broadly relate to air infrastructure technology. (*See* D.I. 288 at 3) The '490, '306, and '793 patents relate to multimedia message services ("MMS") technology. (*See id.* at 2) The '352 patent discloses a solution related to directory assistance for wireless callers (*see* D.I. 772 at 84-85), while the '677 patent discloses a solution directed to data transmission in fragments over Wi-Fi technology (*see* D.I. 288 at 2-3).

On April 14, 2015, Defendants filed a motion for judgment on the pleadings that certain claims of the '737 patent, '200 patent, and '957 patent are patent-ineligible under 35 U.S.C. § 101. (D.I. 305) The Court granted Defendants' motion on December 30, 2016. (D.I. 748) Subsequently, on January 18, 2017, IV filed a motion for partial reconsideration. (D.I. 752) In its Motion, IV seeks reconsideration of the Court's Memorandum Opinion granting Defendants'

---

[3]Proceedings with respect to the '073 patent are stayed pending disposition of Defendants' Summary Judgment Motion. (*See* D.I. 772 at 3)

[4]According to the parties, "[t]he '677 patent has been stayed pending resolution of the other patents-in-suit." (D.I. 772 at 1 n.3)

motion for judgment on the pleadings that claims 7 and 14 of the '737 patent are patent-ineligible under § 101. (*See id.* at 1) The parties completed briefing on the IV Motion on February 8, 2017. (D.I. 752, 764) While the IV Motion was pending but not yet fully briefed, IV submitted additional letter briefing discussing subsequent authority it believed pertinent. (D.I. 753)

Defendants filed their Summary Judgment Motion on March 2, 2017. (D.I. 772 at 24-30, 49-54, 84-91) The parties completed briefing – which collectively reached a grand total of 394 pages – on the Summary Judgment Motion on May 15, 2017. (D.I. 772, 809, 821) The Court heard four hours of oral argument on the pending motions on June 6, 2017. (D.I. 836 ("Tr."))

## II. LEGAL STANDARDS

### A. Reconsideration

Pursuant to Local Rule 7.1.5, motions for reconsideration should be granted only "sparingly." The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions are granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at \*1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

3

A motion for reconsideration may generally be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). However, in no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

## B. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party,

4

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## C. Patent-Eligible Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof,

5

may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted). "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step 2"). *Id.* (certain quotation marks omitted). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

### 1. *Mayo* Step 1

At step 1, "the claims are considered in their entirety to ascertain whether their character

6

***as a whole*** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

The Federal Circuit has distinguished claims that are "directed to ***an improvement to computer functionality*** versus being directed to an abstract idea." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (emphasis added). *Enfish*, for example, found claims to be not abstract because the "plain focus of the claims is on an improvement to computer functionality itself," distinguishing such patent claims from those involved in *Alice*, which involved "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. By contrast, in *Alstom*, the Federal Circuit determined that certain claims ***were*** directed to an abstract idea because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." 830 F.3d at 1354. *Enfish* adds that a patent specification's disparagement of prior art or "conventional" implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea. 822 F.3d at 1337, 1339.

Courts should not "oversimplif[y]" key inventive concepts or "downplay[]" an invention's benefits in conducting a step-1 analysis. *See id.* at 1338; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.") (internal quotation marks omitted). "Whether at step one

7

or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *Id.*

### 2. *Mayo* Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step-2 inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an *ordered combination* of these limitations was adequately alleged to be patent-eligible under step 2 at the pleading stage. *Id.* at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs of Texas v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").

8

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, . . . wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.* (internal citation and quotation marks omitted).

### 3. Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). The "concern that drives th[e] exclusionary principle [i]s one of pre-emption." *Id.* That is, where a patent would preempt use of "basic tools of scientific and technological work," that is, "[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For example, in *McRO*, 837 F.3d at 1315, in support of its conclusion that a claim was patent-eligible under step 1, the Federal Circuit held that limitations of the claim "prevent[ed] preemption of all processes for achieving automated lip-synchronization of 3-D characters." In *Bascom*, 827 F.3d at 1350, in support of the Court's conclusion that claims reciting "a specific, discrete implementation of the abstract idea of filtering content" were not patent-ineligible under step 2 at

9

the pleading stage, the Federal Circuit explained that the claims did not preempt "all ways of filtering content on the Internet."

### 4. Machine-or-Transformation Test

"[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). However, it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.* Under the machine-or-transformation test, a patent claim that "uses a particular machine or apparatus" may be patent-eligible if it does not "pre-empt uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). In addition, "a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle" may be patent-eligible if it does not "pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article." *Id.*

## III. DISCUSSION

### A. IV's Motion for Partial Reconsideration

IV seeks reconsideration of the Court's Memorandum Opinion granting Defendants' motion for judgment on the pleadings that claims 7 and 14 of the '737 patent are patent-ineligible under 35 U.S.C. § 101. (*See* D.I. 752 at 1) In IV's view, reconsideration is warranted based on an intervening change in controlling law, the availability of new evidence, and the need to correct a clear error of law or fact. The Court addresses each argument in turn.

10

## 1. Intervening Change in Controlling Law

IV first seeks reconsideration based on a purported intervening change in Federal Circuit case law.[5] In IV's view, reconsideration is warranted because "the Court's analysis [in its Memorandum Opinion] is in conflict with" *Trading Technologies International, Inc. v. CQG, Inc.*, 2017 WL 192716 (Fed. Cir. Jan. 18, 2017) ("*TTI*"). (D.I. 753 at 1) However, as Defendants correctly observe, *TTI* is a non-precedential opinion and, as such, does not represent "an intervening change in *controlling* law." (D.I. 764 at 8 (emphasis added); *see also* Fed. Cir. R. 32.1(d) ("The court . . . will not give one of its own nonprecedential dispositions the effect of binding precedent.")) IV's reliance on *TTI*, therefore, is insufficient to support reconsideration.

In any event, even were *TTI* "controlling law," it does not represent an "intervening change" in the law as it makes no material, relevant modification to the law applicable to whether the asserted claims of the '737 patent are patent-eligible. Rather, as Defendants explain, "[t]he claims in *TTI* relate to a different technology (commodity trading) and provide far more focus and technical detail than those of the '737 Patent, which relate to account management." (D.I. 764 at 9)

## 2. Availability of New Evidence

IV next contends that the Patent Trial and Appeal Board's ("PTAB") November 2016 decision (the "PTAB Decision"), denying the institution of Covered Business Method ("CBM")

---

[5]When the IV Motion was first filed, IV did not seek reconsideration based on an intervening change in controlling law. (*See* D.I. 752 at 3) However, while the IV Motion was pending but not yet fully-briefed, IV submitted additional letter briefing discussing subsequent authority pertaining to the Motion. (*See* D.I. 753) In IV's view, the subsequent authority discussed in its letter briefing represents an intervening change in controlling law. (*See id.* at 1; *see also* D.I. 764 at 8 (Defendants arguing that IV's subsequent authority "is not an intervening change in controlling law") (internal punctuation omitted))

review for the '737 patent, is "new evidence" that "illustrates how the ['737] patent discloses more than a trivial abstraction." (D.I. 752 at 3, 8) The Court disagrees. Contrary to IV's assertions, the PTAB Decision is not "new evidence" as it was issued *before* the Court issued its Memorandum Opinion. (*Compare* D.I. 764-1 Ex. A at 2 (decision issued on November 23, 2016) *with* D.I. 748 (Memorandum Opinion issued on December 30, 2016)) Therefore, the PTAB Decision fails to provide an adequate basis for reconsideration.

Even if the PTAB Decision had been issued after the Court issued its Memorandum Opinion, the Court agrees with Defendants that the PTAB Decision does not have any "bearing on the [§ 101] eligibility of the '737 [p]atent." (D.I. 764 at 6) The PTAB Decision does not discuss whether the invention claimed in the '737 patent is abstract for the purposes of the § 101 analysis; rather, its focus is on whether the '737 patent is eligible for CBM review and concludes that it is not.[6] *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1323, 1328 (Fed. Cir. 2015) (separately discussing CBM eligibility and § 101 eligibility). The Court rejects IV's contention that the PTAB Decision is new evidence based on which the Court should grant reconsideration.

### 3.    Clear Error of Law or Fact

Finally, IV contends that reconsideration is warranted based on the Court's clear errors of law or fact.

---

[6]In its Motion, IV does not argue that the PTAB Decision is an intervening change in controlling law, but insists that the PTAB Decision "contradict[s]" the Court's conclusion with respect to claims 7 and 14 of the '737 patent. (D.I. 752 at 9; *see also id.* at 10 (IV arguing that "[t]he rich disclosure identified by the PTAB is in sharp contrast to the Court's evaluation of the ['737] patent")) As noted above, however, the PTAB Decision "[does] not address the patent eligibility questions at issue" in the Court's Memorandum Opinion. (D.I. 764 at 1)

12

Specifically, IV argues that the Court erred in deciding questions of patent eligibility on a Rule 12(c) motion. (*See* D.I. 752 at 3) In IV's view, the Court's § 101 analysis "gives rise to questions of fact" because it "incorporates both claim construction and additional analysis of [the '737] patent's specification." (*Id.* at 4) The Court disagrees. Both patent eligibility and claim construction are questions of law. *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016) ("The issue of patent-eligibility under § 101 is a question of law."); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) ("[T]he interpretation and construction of patent claims . . . is a matter of law."), *aff'd*, 517 U.S. 370 (1996). Therefore, "it is . . . proper to determine patent eligibility under 35 U.S.C. § 101" on a Rule 12(c) motion. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). Moreover, it is proper for the Court to rely on its claim construction opinion in deciding a Rule 12(c) motion.

IV next contends that the Court erred in declining to resolve conflicting expert testimony while deciding Defendants' Rule 12(c) motion. (*See* D.I. 752 at 8; *see also id.* at 6-7 (discussing three key disputes between experts)) As IV sees it, both sides' expert testimony gives rise to "material factual disputes" that must be resolved before deciding whether claims 7 and 14 are patent-eligible. (*Id.* at 8; *see also id.* at 7 (stating that IV's expert's opinion could potentially "contradict the Court's . . . conclusion that the claim elements . . . lack[] an inventive concept")) Again, the Court disagrees. "In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004); *see also Content Aggregation Sols. LLC v. Blu Prods., Inc.*, 2016 WL 6995490, at *7 (S.D. Cal. Nov. 29, 2016) (stating that inventor declaration "is inappropriate to consider on a

13

motion to dismiss"). Hence, the Court correctly disregarded IV's expert declarations in deciding Defendants' motion for judgment on the pleadings. (*See* D.I. 748 at 28 n.7) ("In ruling on Defendants' [Rule 12(c) motion], the Court has not relied on any of the extrinsic evidence presented by the parties, but only on the pleadings and patents, which were attached as exhibits to the complaint.")

Lastly, IV insists that the Court erred in not "credit[ing] the [Patent and Trademark Office's ("PTO")] determination of non-obviousness." (D.I. 752 at 6) However, as Defendants explain, "even patents found to be novel and non-obvious . . . can still be [patent-]ineligible." (D.I. 764 at 4; *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1311 (Fed. Cir. 2016) (concluding that asserted claims were patent-ineligible under § 101 even though "[t]he jury found that Symantec had not proven by clear and convincing evidence that any asserted claims were invalid under §§ 102 and 103")) Thus, IV's reliance on the PTO's determination is unavailing.

## 4. Conclusion with respect to Reconsideration

As discussed above, IV has failed to demonstrate an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error of law or fact that could justify reconsideration. Accordingly, the Court will deny the IV Motion.

## B. Defendants' Summary Judgment Motion

### 1. T-Mobile's Motion that Claims 1, 7, and 8 of the '0032 Patent Are Patent-Ineligible

T-Mobile seeks summary judgment that claims 1, 7, and 8 of the '0032 patent are patent-

ineligible under 35 U.S.C. § 101. (*See* D.I. 772 at 24) The Court addresses each claim in turn.

#### a. Claim 1

Claim 1 of the '0032 patent is as follows:

> A method for transmitting digital data in a wireless communication environment comprising:
>
> dividing an incoming stream of serial data bits having a first bit duration (Tb) into a plurality (K) of parallel data bit streams;
>
> expanding by K times the bit duration of the incoming data so that the resulting symbol duration in said parallel data streams equals Ktb;
>
> modulating said expanded parallel data streams with modulating sequences, each said modulating sequence having a processing gain N, having a sequence period equal to the symbol duration KTb of said expanded data streams, and having N binary chips within each period so that each chip has a chip duration of Tc =KTb /N, wherein K and N are integers and N>K; and
>
> summing the modulated parallel data streams for transmission.

('0032 patent at 10:40-57)

#### 1. *Mayo* Step 1

Step 1 requires the Court to consider whether the claims are directed to a patent-ineligible

abstract idea. Broadly speaking, claim 1 is directed to the idea of improving data transmission

over wireless networks. T-Mobile argues that claim 1 is directed to an abstract idea because it is

"nothing more than mathematical manipulation." (D.I. 772 at 25-26) Specifically, T-Mobile notes that "[e]very step [recited in claim 1] is either a basic mathematical operation on or rearrangement of digital numbers." (*Id.* at 26)

IV responds that the method disclosed in claim 1 "provides a practical solution to a real-world problem: transmitting data wirelessly with minimal errors and without using an excessive amount of frequency bandwidth." (D.I. 809 at 26) In support of its argument, IV notes that, prior to the invention of the '0032 patent, solutions to transmission problems "came at a price: inefficient use of frequency bandwidth." (*Id.* at 27) The '0032 patent, IV argues, "offers a solution to wireless . . . transmission problems: a method that reduces transmission errors with minimal impact on frequency bandwidth efficiency." (*Id.*)

The Court agrees with IV. The invention described by claim 1 is directed to improving the transmission of data in a wireless communication system, while avoiding transmission problems, such as fading. The specification of the '0032 patent confirms that this concept is the essence of the claimed invention. (*See* '0032 patent at 2:28-30) ("According to the present invention there is provided a method for the high speed transmission of data in a wireless communication system."); 2:43-45 ("[T]he proposed method has the advantage of being more robust to fading and multipath problems than multicarrier modulation.")

The Court further agrees with IV that the claims are "directed to an improvement of an existing technology." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see also id.* at 1335 ("[W]e find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis."). The specification states the claimed method in the '0032 patent avoids "fading

16

and multipath problems" that were common in then-existing technology. ('0032 patent at 2:44; *see also* 2:67-3:4 ("This makes it possible to obtain high-rate DS spread spectrum modulation within the bandwidth of the original high-rate transmission stream while maintaining the advantages of DS spread spectrum such as multi-path rejection."))

Finally, the Court agrees with IV that the '0032 patent's "reli[ance] on math" does not render the claims patent-ineligible under Step 1. (D.I. 809 at 28 (internal quotation marks omitted); *see also Alice*, 134 S. Ct. at 2356-57 ("One of the claims in *Bilski* reduced hedging to a mathematical formula, but the Court did not assign any special significance to that fact. . . . Instead, the Court grounded its conclusion that all of the claims at issue were abstract ideas in the understanding that risk hedging was a fundamental economic practice.") (internal quotation marks omitted); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) ("[A]n invention is not ineligible just because it relies upon a law of nature or a mathematical algorithm.")) Instead of simply reciting a mathematical relationship, the '0032 patent employs that relationship to aid in the high-speed transmission of data without compromising bandwidth efficiency. (*See* '0032 patent at 3:36-41 ("Consequently, it is possible to achieve high-rate DS spread spectrum modulation within the bandwidth of the original high-rate transmission stream while maintaining the advantages of DS spread-spectrum such as multipath rejection."); *see also Diamond v. Diehr*, 450 U.S. 175, 187 (1981) ("[A]n application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection."))

Therefore, claim 1 is not directed to an abstract idea and, as such, satisfies step 1.

## 2. *Mayo* Step 2

Given the conclusion above with respect to step 1, the Court need not proceed to step 2 of the analysis. *See Enfish*, 822 F.3d at 1339.

### b. Claims 7 and 8

Claims 7 and 8 depend from claim 1. They provide:

> 7. A method according to claim 1, wherein the system performance is adjustable by varying the ratio of K to N.
>
> 8. A method according to claim 1, further including the step of inserting a pilot channel with data unrelated to the incoming data stream alongside the expanded parallel data streams, for estimating channel parameters.

('0032 patent at 11:3-8)

As discussed above, claim 1 is not directed to an abstract idea and is patent-eligible. It follows that claims 7 and 8, which are dependent on – and narrower than – claim 1 are also patent-eligible. There is no necessity to undertake a step 1 or 2 analysis to reach this conclusion. *See generally Thales Visionex Inc. v. United States*, 850 F.3d 1343, 1345 n.1 (Fed. Cir. 2017) ("TVI argues that the Claims Court erred by failing to separately consider the eligibility of dependent claims. Because we hold the independent claims eligible, we do not reach this issue.").

### c. Conclusion with respect to the '0032 patent

For the foregoing reasons, the Court concludes that the asserted claims of the '0032 patent are not directed to an abstract idea and, hence, are patent-eligible. Accordingly, the Court

will deny T-Mobile's motion for summary judgment that claims 1, 7, and 8 of the '0032 patent are patent-ineligible under § 101.

### 2. Defendants' Motion that Claims 17, 20, and 24 of the '490 Patent and Claim 17 of the '306 Patent Are Patent-Ineligible

The '490 and '306 patents share a specification. Both disclose "[a] method and a system for transmitting messages containing multimedia information or content that enables transmission and communication of multimedia messages between subscribers connected to telecommunications systems of different system operators." ('490 patent at Abstract; '306 patent at Abstract) Both patents also "cover[] the same basic concept – utilizing an e-mail message for inter-carrier multimedia messaging – with one patent [(i.e. the '490 patent)] covering sending messages and the other [(i.e. the '306 patent)] receiving them." (D.I. 772 at 74)

Defendants seek summary judgment that claims 17, 20, and 24 of the '490 patent and claim 17 of the '306 patent cover patent-ineligible subject matter. (*See id.* at 49) The parties treat claim 17 of the '490 patent and claim 17 of the '306 patent as representative claims. (*See* D.I. 809 at 50; Tr. at 8) The Court addresses both of the representative claims.

#### a. Claim 17 ('490 patent)

Claim 17 of the '490 patent is as follows:

> A method of transmitting a multimedia message, comprising:
>
> receiving a multimedia message from a first mobile station at a multimedia message server associated with a mobile operator, wherein the received multimedia message is destined for a second mobile station;
>
> obtaining address information associated with the second mobile station, based upon the received multimedia message;

19

generating an e-mail message based upon the received multimedia
message if the second mobile station is not associated with
the mobile operator, wherein the e-mail message is
formatted to be transformable back into the received
multimedia message; and

transmitting the e-mail message to a server from a network
interface.

('490 patent at 7:18-34)

## 1. *Mayo* Step 1

Claim 17 is directed to the idea of "converting a multimedia message into a common

format – an email message – for sending to another party and then converting the received

common format back into [a] multimedia message." (D.I. 772 at 49) Defendants argue that

claim 17 covers an abstract idea because it addresses the problem of "incompatability in

communication." (*Id.*) In Defendants' view, such a problem "has existed ever since human

languages diverged" and claim 17's solution "is equally ancient" because it involves "conversion

to and from a common format." (*Id.*)

The Court agrees. The specification of the '490 patent acknowledges that the invention is

directed to conversion of multimedia messages sent between "different telecommunication

systems operators." (*See* '490 patent at 3:36-40 ("[T]he present invention renders it

advantageously possible to send multimedia messages between the systems and mobile stations

and subscribers of different telecommunication system operators."); *see also TriPlay, Inc. v.

WhatsApp, Inc.*, 2015 WL 1927696, at *10 (D. Del. Apr. 28, 2015) ("[T]he majority of the

limitations of the claims at issue in the '475 patent describe only an abstract idea: the idea of

converting and forwarding messages, so that the messages are sent in a format and layout in

20

which they can be received by a recipient.") (internal quotation marks omitted)) Moreover, as Defendants note, each step in claim 17 – receiving a multimedia message, generating an e-mail based on the multimedia message, and formatting the e-mail message back into a multimedia message – also conveys an abstract idea and, thus, fails to render the claim non-abstract at step 1. (*See* D.I. 772 at 50-51; *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("This method reflects standard encoding and decoding, an abstract concept long utilized to transmit information.")) It follows, then, that just like the patent-ineligible claims in *TriPlay* and *RecogniCorp*, claim 17 is directed to an abstract idea.

IV counters that claim 17 is not directed to an abstract idea because it is "limited to the transmission of multimedia messages in a multi-carrier environment." (D.I. 809 at 51) But claims that "limit [an] abstract idea to a particular environment" are "no less abstract for the step 1 analysis." *In re TLI Communications LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). Thus, limiting the claims to particular field of use – here, intercarrier transmission of multimedia messages – is unavailing for purposes of step 1.

Accordingly, claim 17 fails to satisfy step 1.

## 2. *Mayo* Step 2

At step 2, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 132 S. Ct. at 1294 (explaining that steps of claim must amount to more than "well-understood, routine, conventional activity").

Defendants contend that claim 17 fails to provide an inventive concept, as it simply

consists of "conventional steps, specified at a high level of generality." (D.I. 772 at 50) (internal

quotation marks omitted) The Court agrees. The specification states that the multimedia

message servers are conventional and that "the invention utilizes existing, well-known, and

widely-available e-mail practices." ('490 patent at 3:45-46; *see also* 2:54-57 ("Multimedia

message servers may be . . . integrated with already-existing network components.")) Moreover,

IV's own expert "admitted that[, at the time of the invention,] e-mail was known as a capable

format specifically for transmitting multimedia messages." (Tr. at 13; *see also* D.I. 775 Ex. 42

¶ 79 ("Using the [e]-mail format for transmission of intercarrier MMS messages was the best

choice because the e-mail format had already been designed (reducing the design work required

by the standardization committee), and widely implemented. In addition, the e-mail MIME

format w[as] already capable of transmitting messages that contained multiple media

components.")) Hence, the elements of claim 17 fail to add an inventive concept.

IV opposes this conclusion by relying on *DDR Holdings*, 773 F.3d at 1257. In IV's view,

the '490 patent is comparable to the patent in *DDR Holdings* because the '490 patent "solve[s] a

problem unique to the [MMS] network through the use of a then-unrelated technology, email."

(D.I. 809 at 55) IV's argument is unavailing. The claimed invention does not overcome a

problem specifically arising in the realm of multimedia messaging. Instead, "[t]he issue of

incompatibility in communication has existed as long as language itself. Translation has always

been the solution. . . . Reformatting information does not solve a problem arising in the realm of

computer networks and is not an inventive concept." *Orbcomm Inc. v. Calamp Corp.*, 215 F.

Supp. 3d 499, 507 (E.D. Va. 2016).

IV next contends that claim 17 should be found patent-eligible by analogy to *Messaging*

*Gateway Solutions, LLC v. Amdocs, Inc.*, 2015 WL 1744343 (D. Del. Apr. 15, 2015). But the

claim at issue in *Messaging Gateway Solutions* is not analogous to claim 17.[7] The claim at issue

in *Messaging Gateway Solutions* "contain[ed] meaningful limitations because it applie[d] only to

SMS messages addressed to phone numbers that are less than seven digits and associated with a

URL," *id.* at *4, and further described "how an SMS message was converted into an IP message

– by inserting the SMS message body into the IP message" (D.I. 821 at 27; *see also Yodlee, Inc.*

*v. Plaid Techs. Inc.*, 2016 WL 2982503, at *25 (D. Del. May 23, 2016) (distinguishing

*Messaging Gateway Solutions*)). Claim 17, by contrast, contains no such limitations "about how

to perform the claimed conversion between a conventional multimedia message and a

conventional email message." (D.I. 821 at 27-28) (internal quotation marks omitted) Thus,

unlike the claim at issue in *Messaging Gateway Solutions*, claim 17 does not add an inventive

---

[7]The claim at issue in *Messaging Gateway Solutions*, 2015 WL 1744343, at * 2-3,
recited:

> A method of using a computer system to facilitate two-way
> communication between a mobile device and an Internet server,
> comprising:
>
> the computer system receiving a text message via a first
> communication path;
>
> the computer system inserting at least a message body of the text
> message into an Internet Protocol (IP) message; and
>
> the computer system transmitting the IP message to the Internet
> server, via a second communication path,
>
> wherein the text message originates from the mobile device as a
> short message service (SMS) text message, and wherein the
> SMS text message contains a multidigit address that is
> fewer than seven digits and that is associated with a URL of
> the internet server.

23

concept to the underlying abstract idea of translation.

Finally, at oral argument, IV added that claim 17 contains an inventive concept because the PTO found the claim "to be inventive, getting over the standards of [§§] 102 and 103." (Tr. at 32) IV further argued that deciding questions of patent-eligibility during summary judgment would "destroy[]" its Seventh Amendment right to a jury trial. (*Id.*) The Court disagrees. As discussed above in connection with the IV Motion, "even patents found to be novel and non-obvious . . . can still be [patent-]ineligible." (D.I. 764 at 4; *see also Intellectual Ventures I*, 838 F.3d at 1311 (concluding that asserted claims were patent-ineligible under § 101 even though "[t]he jury found that Symantec had not proven by clear and convincing evidence that any asserted claims were invalid under §§ 102 and 103")) Moreover, patent-eligibility is a question of law that is amenable to summary judgment where, as here, "there is . . . no factual dispute between the parties . . . with respect to [whether the claims contain an] inventive concept." (Tr. at 50; *see also Rapid Litig. Mgmt.*, 827 F.3d at 1047 ("The issue of patent-eligibility under § 101 is a question of law."))

Accordingly, claim 17 does not satisfy step 2.

### 3. Machine-or-Transformation Test

At oral argument, IV argued that claim 17 is patent-eligible under the machine-or-transformation test because it "transform[s]" data "from an MMS message format to an e-mail and then back again." (Tr. at 34) The Court disagrees.

As explained above, in order to satisfy the machine-or-transformation test, it is not enough for a process or method to be tied to a machine; the machine must "impose meaningful limits on the claim's scope." *CyberSource Corp. v. Retail Decision, Inc.*, 654 F.3d 1366, 1375

(Fed. Cir. 2011) (internal quotation marks omitted). "In other words, the machine must play a significant part in permitting the claimed method to be performed." *Id.* (internal quotation marks omitted). Here, because claim 17 "merely claim[s] a software implementation of a purely mental process [(i.e, translation)] that could otherwise be performed without the use of a computer," the claim's limitations fail to provide any meaningful limits on the scope of the claim. *Id.*

### 4. Preemption

Finally, at oral argument, IV stated that claim 17 does not have a large preemptive effect because the claim is limited to intercarrier transmission of MMS messages. (*See* Tr. at 33) "Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2511 (2016). Thus, IV's point about preemption – even if correct – does not alter the Court's conclusion.

### b. Claim 17 ('306 patent)

Claim 17 of the '306 patent provides:

A method comprising:

receiving an e-mail message at a first multimedia message server associated with a first mobile operator, wherein the e-mail message includes content corresponding to a multimedia message sent from a mobile station associated with a second mobile operator and destined for a recipient mobile station associated with the first mobile operator;

converting the received e-mail message into a multimedia message for delivery to the recipient mobile station; and

sending a notification of receipt of the multimedia message to the

25

recipient mobile station.

('490 patent at 7:22-33)

## 1. *Mayo* Step 1

Like claim 17 of the '490 patent, claim 17 of the '306 patent generally pertains to converting a multimedia message sent between different telecommunications operators or providers. (*See* '306 patent at 2:8-11) ("It is a particular object of the invention to provide a method and a system that enable the ready transmission of messages containing multimedia information or content between different telecommunication system operators or providers.") Neither IV nor Defendants provide any basis to differentiate claim 17 of the '490 patent from claim 17 of the '306 patent. (*See, e.g.*, D.I. 772 at 74) (Defendants: "The '490/'306 Patents were originally a single patent, before IV separated them in a reissue. . . . The patents act as a pair covering the same basic concept – utilizing an e-mail message for inter-carrier multimedia messaging – with one patent covering sending messages and the other receiving them.") Therefore, for the same reasons the Court has concluded that claim 17 of the '490 patent is directed to a patent-ineligible abstract idea – that is, because the invention disclosed in the claim is directed to the abstract idea of conversion to and from a common format – the Court concludes that claim 17 of the '306 patent is directed to a patent-ineligible abstract idea.

Thus, claim 17 of the '306 patent fails to satisfy step 1.

## 2. *Mayo* Step 2

IV contends that claim 17 of the '306 patent, like claim 17 of the '490 patent, adds an inventive concept and is analogous to the claims at issue in *DDR Holdings* and *Messaging Gateway Solutions*. IV's contentions are identical to those the Court has already rejected with

26

respect to claim 17 of the '490 patent. Hence, for the same reasons the Court has concluded that claim 17 of the '490 patent is patent-ineligible – because the claim utilizes existing, well-known, and conventional practices; addresses a problem that has an analogue in the non-digital world; and contains no limitations that specify how to perform the claimed conversion – the Court concludes that claim 17 of the '306 patent does not add an inventive concept to the underlying abstract idea of conversion to and from a common format.

Thus, claim 17 of the '306 patent does not satisfy step 2 and, as such, is not directed to patentable subject matter.

### c. Conclusion with respect to the '490/'306 patents

For the foregoing reasons, the Court concludes that claims 17, 20, and 24 of the '490 patent and claim 17 of the '306 patent are not directed to patent-eligible subject matter. Accordingly, the Court will grant Defendants' motion for summary judgment that claims 17, 20, and 24 of the '490 patent and claim 17 of the '306 patent are patent-ineligible under 35 U.S.C. § 101.

### 3. Sprint's and U.S. Cellular's Motion that Claims 1, 5, and 9 of the '352 Patent Are Patent-Ineligible

Sprint and U.S. Cellular ask the Court to grant summary judgment that claims 1, 5, and 9 of the '352 patent are patent-ineligible under § 101. (*See* D.I. 772 at 84) The Court addresses each claim in turn.

### a. Claim 1

Claim 1 of the '352 patent provides:

> A method of providing a directory assistance call completion
> service to a wireless communication service subscriber comprising:

27

receiving a request for directory assistance from a wireless communication terminal at a mobile communications switching office;

forwarding data identifying the wireless communication terminal from the mobile communications switching office to an operator service system;

establishing a landline communication link between the mobile communications switching office and the operator service system to provide two way communications between the wireless communication terminal and the operator service system;

receiving information from the wireless communication terminal identifying a particular listing from a directory of listings;

retrieving a destination number corresponding to the identified listing;

receiving a request for completion of a communication link between the wireless communication terminal and a station identified by the destination number;

establishing a landline communication link to provide a complete communication connection between the wireless communication terminal and the identified station; and

recording the identity of the wireless communication terminal in the operator service system.

('352 patent at 13:41-68, 14:1-2)

### 1. *Mayo* Step 1

Claim 1 is directed to the idea of providing directory assistance services to wireless subscribers and billing those subscribers for their use of directory assistance services. Sprint and U.S. Cellular argue that claim 1 claims an abstract idea because it is "directed to a fundamental concept of human behavior that has existed for centuries: using a third-party intermediary to

28

locate and be connected to another individual or desired service." (D.I. 772 at 87) Sprint and U.S. Cellular further argue that the solution recited in claim 1 – collecting, recording, and forwarding billing data – also corresponds to an abstract idea because those tasks "[could] be done by a human without any particular technology." (*Id.* at 88)

The Court agrees with Sprint and U.S. Cellular. The invention described in claim 1 is directed to the abstract idea of "using a third-party intermediary to . . . connect[] to another individual or desired service" and, in turn, billing cellular "caller[s] who request[] call completion." (*Id.* at 85, 87) This is clear from the specification. (*See* '352 patent at 2:47-51 ("One objective of the present invention is to provide directory assistance call completion to all subscribers, including roaming users initiating intra-LATA directory assistance calls from a mobile wireless communication terminal, such as a cellular telephone."); 2:52-58 ("Another objective of the present invention is to provide a communications system and call processing procedures which facilitate billing all charges incurred by directory assistance call completion services provided to a mobile wireless communication terminal, such as a cellular telephone, to the subscriber who actually requests the call completion service."); 2:59-64 ("A further objective is to provide directory assistance call completion service to customers of wireless communication carriers and non-BELL exchange carriers and to supply such carriers with detailed report data regarding completed calls, to facilitate billing for the service to the individual customers."))

The Federal Circuit has found similar claims to be directed to abstract ideas. For example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), the Federal Circuit held that the claims under consideration were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected

29

data set, and 3) storing that recognized data in a memory." In characterizing those limitations as abstract ideas, the Federal Circuit noted that the "concept of data collection, recognition, and storage is undisputedly well-known." *Id.* Similarly, in *CyberSource Corp.*, 654 F.3d at 1373, the Federal Circuit held that the claims at issue were "merely an abstract idea" because the claimed methods "consist[] of only the general approach of obtaining information about credit card transactions utilizing an Internet address and then using that information in some undefined manner to determine if the credit card transaction is valid," *id.* at 1376; *see also Elec. Power Grp.*, 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

Here, too, claim 1 is directed to an abstract idea. Accordingly, claim 1 fails to satisfy step 1.

## 2.    *Mayo* Step 2

In IV's view, claim 1 contains an inventive concept because it "provides an inventive solution to three problems in the prior art: (1) the call record problem, (2) the call location problem, and (3) the driver safety problem." (D.I. 809 at 80) With respect to the call record and call location problems, IV argues that claim 1 of the '352 patent allows cellular providers "to generate a complete call record" for purposes of billing cellular subscribers. (*Id.*) With respect to the driver safety problem, IV contends that claim 1 "enables callers to obtain and be connected to a particular number with minimal interaction with the keypad." (*Id.* at 81)

The Court disagrees. Like the multitude of other data-collection steps recently considered by courts, generating a complete call record is an abstract idea. *See Elec. Power Grp.*, 830 F.3d

at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). Moreover, the specification indicates that there were prior art directory assistance systems that enabled callers to obtain and be connected to a particular number with minimal interaction with the keypad. (*See* '352 patent at 1:11-16) ("Directory assistance call completion or 'DACC' service has been deployed by a number of the local telephone operating companies (TELCO's). The DACC service enables a directory assistance caller to request and obtain automatic completion of a call to the station identified in the requested directory listing. . . .") Thus, IV has not pointed to record evidence from which a reasonable factfinder could find an inventive concept in IV's purported solution to the three prior art problems.

IV's reliance on claim 1's limitations is similarly unavailing. (*See* D.I. 809 at 80) As Sprint and U.S. Cellular state, the claimed solution is implemented using "generic equipment" that fails to transform the claimed method into patent-eligible subject matter. (D.I. 772 at 90 (identifying claim 1's generic equipment: "[a] wireless communication terminal," "mobile communications switching office," and "operator service system") (internal quotation marks omitted); *see also* '352 patent at 6:18-21 (noting that mobile telephone switching office is "is a program controlled telephone switch set up for processing cellular telephone calls, for example an AUTOPLEX 1000 switch manufactured by AT&T"), 7:26-27 ("Northern Telecom and AT&T market operator service systems.")) Although lengthy, the claim adds nothing inventive but, instead, contains merely generic, broad instructions to perform a series of abstract steps. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (concluding that "[a] claim [that] simply recites the use of generic features of cellular telephones,

31

such as a storage medium and a graphical user interface, as well as routine functions, such as

transmitting and receiving signals, to implement the underlying idea" had no inventive concept

that could "transform the [underlying] abstract idea . . . into a patent-eligible application"); *Elec.*

*Power Grp.*, 830 F.3d at 1351 ("Though lengthy and numerous, the claims do not go beyond

requiring the collection, analysis, and display of available information in a particular field, stating

those functions in general terms, without limiting them to technical means for performing the

functions that are arguably an advance over conventional . . . technology.").

Accordingly, claim 1 fails to satisfy step 2.

### b. Claims 5 and 9

Claims 5 and 9 depend from claim 1. They provide:

> 5. A method of providing a directory assistance call completion service as in claim 1, wherein the steps of forwarding data and establishing a landline communication link between the mobile communications switching office and the operator service system are both performed via a dedicated trunk connected between the mobile communications switching office and the operator service system.

> 9. A method of providing a directory assistance call completion service as in claim 1,
>
> further comprising the step of using the data identifying the wireless communication terminal to determine if the subscriber has subscribed to a completion service,
>
> wherein if the subscriber has subscribed to a completion service the step of receiving a request for completion of a communication link comprises determining whether or not the subscriber has terminated communications at the wireless

communication terminal within a set time period,
the operator service system interpreting a failure of
the subscriber to terminate within the set period as
said request for completion of a communication
link.

('352 patent at 14:25-32, 48-62)

Claims 5 and 9, like claim 1, are patent-ineligible. At step 1, they are directed to the

same abstract ideas as claim 1. At step 2, they recite additional generic computer equipment –

e.g., a generic trunk – but no inventive concept. Accordingly, claims 5 and 9 are patent-ineligible

under § 101.

### c. Conclusion with respect to the '352 patent

For the foregoing reasons, the Court concludes that claims 1, 5, and 9 of the '352 patent

are directed to an abstract idea. The claims do not include an inventive concept that would make

them patent-eligible. Accordingly, the Court will grant Sprint's and U.S. Cellular's motion.

## IV. CONCLUSION

An appropriate Order follows.