# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-1632-LPS |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | : | |
| Defendants. | : | |
| INTELLECTUAL VENTURES I LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-1634-LPS |
| NEXTEL OPERATIONS, INC. and SPRINT SPECTRUM L.P., BOOST MOBILE, LLC, and VIRGIN MOBILE USA, L.P., | : | |
| Defendants | : | |
| INTELLECTUAL VENTURES II LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-1635-LPS |
| NEXTEL OPERATIONS, INC. and SPRINT SPECTRUM L.P., BOOST MOBILE, LLC, and VIRGIN MOBILE USA, L.P., | : | |
| Defendants | : | |

INTELLECTUAL VENTURES I LLC,

    Plaintiff,

v.

UNITED STATES CELLULAR CORPORATION,

    Defendant.

C.A. No. 13-1636-LPS

---

INTELLECTUAL VENTURES II LLC,

    Plaintiff,

v.

UNITED STATES CELLULAR CORPORATION,

    Defendant.

C.A. No. 13-1637-LPS

---

INTELLECTUAL VENTURES I LLC,

    Plaintiff,

v.

T-MOBILE USA, INC. and T-MOBILE US, INC.,

    Defendants.

C.A. No. 15-800-LPS

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Martin J. Black, DECHERT LLP, Philadelphia, PA
Jeffrey B. Plies, DECHERT LLP, Austin, TX
Justin F. Boyce, DECHERT LLP, Mountain View, CA

    Attorneys for Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC.

Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Josh Krevitt, Benjamin Hershkowitz, GIBSON, DUNN & CRUTCHER LLP, New York, NY
Mark N. Reiter, GIBSON, DUNN & CRUTCHER LLP, Dallas, TX
Brian M. Buroker, GIBSON, DUNN & CRUTCHER LLP, Washington, DC
Alison R. Watkins, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA
Eric T. Syu, Casey J. McCracken, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA
Matthew R. Harvey, GIBSON, DUNN & CRUTCHER LLP, Denver, CO

    Attorneys for Defendants T-Mobile USA, Inc. and T-Mobile US, Inc.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Brian C. Riopelle, David E. Finkelson, Kristen M. Calleja, Justin R. Lowery, MCGUIRE WOODS LLP, Richmond, VA
Rachelle H. Thompson, MCGUIRE WOODS LLP, Raleigh, NC

    Attorneys for Defendants Sprint Spectrum, L.P.; Nextel Operations, Inc.; Boost Mobile LLC; and Virgin Mobile USA, L.P.


Steven J. Fineman, Katharine L. Mowery, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE
Douglas I. Lewis, Savan N. Vaghani, John P. Wisse, Paul E. Veith, SIDLEY AUSTIN LLP, Chicago, IL
John P. Wisse, SIDLEY AUSTIN LLP, Dallas, TX
Ashish Nagdev, SIDLEY AUSTIN LLP, Palo Alto, CA

    Attorneys for Defendant United States Cellular Corporation.

---

**MEMORANDUM OPINION**

**UNSEALED ON
AUGUST 29, 2017**

August 23, 2017
Wilmington, Delaware

*[signature]*

STARK, U.S. District Judge:

Pending before the Court are:

(i) Plaintiffs Intellectual Ventures I ("IV I") and Intellectual Ventures II's ("IV II," and collectively with IV I, "Plaintiffs" or "IV") motion for summary judgment on Defendants' affirmative defenses related to U.S. Patent No. 5,790,793 (the "'793 patent") (C.A. No. 13-1632-LPS D.I. 768 at 30-33)[1] (the "Affirmative Defense Motion");

(ii) Defendants T-Mobile USA, Inc. ("T-Mobile USA") and T-Mobile US, Inc.'s ("T-Mobile US," and collectively with T-Mobile USA, "T-Mobile") motion for summary judgment that authorized sales by Ericsson Inc. ("Ericsson USA") exhausted IV's rights under U.S. Patent No. 6,170,073 (the "'073 patent") (D.I. 772 at 2-6) (the "'073 Motion");

(iii) T-Mobile's motion for summary judgment that prosecution history estoppel bars IV from relying on the doctrine of equivalents to establish infringement of U.S. Patent No. 5,960,032 (the "'0032 patent") (D.I. 772 at 7-15) (the "'0032 Motion"); and

(iv) T-Mobile; Nextel Operations, Inc. ("Nextel"); Sprint Spectrum L.P. ("Sprint Spectrum"); Boost Mobile LLC ("Boost Mobile"); and Virgin Mobile USA, L.P.'s ("Virgin Mobile," and collectively with T-Mobile, Nextel, Sprint Spectrum, and Boost Mobile, "Defendants") motion for summary judgment of non-infringement of the '793 patent (D.I. 772 at 75-78) (the "'793 Motion").

I.  **BACKGROUND**

IV filed suit against T-Mobile and Sprint on February 16, 2012 and against U.S. Cellular on May 7, 2012, alleging infringement of 16 patents. (*See, e.g.*, C.A. No. 12-193-LPS D.I. 1, 20)

---

[1]Unless otherwise noted, all citations to the docket are to C.A. No. 13-1632-LPS.

1

IV's infringement allegations have since been reduced to 16 claims across seven patents: U.S. Patent No. 6,170,073 (the "'073 patent"),[2] the '0032 patent, the '490 patent, the '306 patent, U.S. Patent No. 5,790,793 (the "'793 patent"), the '352 patent, and U.S. Patent No. 5,557,677 (the "'677 patent").[3] (*See* D.I. 772 at 1) IV asserts the '0032 patent, '793 patent, '490 patent, and '306 patent against T-Mobile; the '793 patent, '490 patent, '306 patent, and '352 patent against Sprint; and the '490 patent and the '352 patent against U.S. Cellular. (*See* D.I. 768 at 2)

The '073 and '0032 patents broadly relate to air infrastructure technology. (*See* D.I. 288 at 3) The '490, '306, and '793 patents relate to multimedia message services ("MMS") technology. (*See id.* at 2) The '352 patent discloses a solution related to directory assistance for wireless callers (*see* D.I. 772 at 84-85), while the '677 patent discloses a solution directed to data transmission in fragments over Wi-Fi technology (*see* D.I. 288 at 2-3).

IV and Defendants filed their respective motions for summary judgment on March 2, 2017. (D.I. 768, 772) The parties completed briefing on their motions for summary judgment on May 15, 2017. (D.I. 768, 808, 819 (IV's motion for summary judgment); D.I. 772, 809, 821 (Defendants' motion for summary judgment)) Collectively, the parties filed a total of 478 pages of briefing in relation to their motions. The Court heard four hours of oral argument on June 6, 2017. (D.I. 836 ("Tr."))

By separate opinion issued today, the Court has resolved all of the portions of Defendants' summary judgment motions which contend that some or all of the asserted patent

---

[2] Proceedings with respect to the '073 patent are stayed pending disposition of Defendants' Summary Judgment Motion. (*See* D.I. 772 at 3)

[3] According to the parties, "[t]he '677 patent has been stayed pending resolution of the other patents-in-suit." (D.I. 772 at 1 n.3)

claims are invalid under 35 U.S.C. § 101 due to lack of patentable subject matter. In the instant Memorandum Opinion, the Court resolves other summary judgment issues.[4]

## II.  LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

---

[4]After the Court receives a status report and considers the parties' proposal(s), the Court will, if necessary, issue a separate opinion (or opinions) resolving any remaining motions.

3

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. IV's Motion for Summary Judgment on Defendants' Affirmative Defenses Related to the '793 Patent

IV seeks summary judgment on the following affirmative defenses that, in IV's view, are unsupported by sufficient factual or legal bases disclosed in Defendants' interrogatories: waiver; acquiescence; estoppel; unclean hands; promissory estoppel; and breach of contract. (*See* D.I. 768 at 30-33) In their answering brief, Defendants agree to withdraw the above-mentioned

4

defenses, but request that the Court dismiss the defenses without prejudice. (*See* D.I. 808 at 29-30) In Defendants' view, "[a] dismissal without prejudice is . . . consistent with other stipulations of the parties, such as the Stipulation Regarding Narrowing of Issues at D.I. 733." (*Id.* at 3 n.6) In its reply, IV opposes Defendants' request, arguing that "Defendants have had ample opportunity to develop the record on th[o]se defenses [but] have failed to do so." (D.I. 819 at 18)

The Court agrees with IV that dismissal without prejudice is not warranted here. Defendants first raised their affirmative defenses in their answers to IV's operative complaint, and served them on March 24, 2014. (*See, e.g.*, D.I. 108) (T-Mobile's answer) Fact discovery closed on November 2, 2015. (*See* D.I. 513) Hence, Defendants had more than 18 months to develop their affirmative defenses after they were first raised. Having chosen not to develop their defenses during that time, there is no reason to permit Defendants to maintain their right to assert those defenses at some later, unspecified date.

Accordingly, the Court will grant IV's motion.

### B. T-Mobile's Motion that Authorized Sales by Ericsson USA Exhausted IV's Rights Under the '073 Patent

T-Mobile seeks summary judgment that a retroactive sublicense between Ericsson Sweden and Ericsson USA (the "Ericsson Sweden-Ericsson USA sublicense") exhausted IV's patent rights under the '073 patent.[5] (*See* D.I. 772 at 6) In T-Mobile's view, the Ericsson Sweden-Ericsson USA sublicense is sufficient to exhaust *all* of IV's claims under the '073 patent because "IV accuses . . . T-Mobile of infringement based only on equipment sold by" Ericsson

---

[5] According to Defendants, Ericsson USA has been a wholly-owned subsidiary of Ericsson Sweden since at least May 15, 1997. (D.I. 772 at 4; *see also* D.I. 773 Ex. 2 Ex. 2 at 1)

5

USA. (*Id.* at 2)

IV responds that the Ericsson Sweden-Ericsson USA sublicense did not exhaust IV's infringement claims because Ericsson Sweden purportedly obtained its underlying license from Nokia Corporation ("Nokia"). (*See* D.I. 809 at 5) In IV's view, "Nokia ... could not have licensed the '073 patent to Ericsson Sweden ... because Nokia ... did not own the '073 patent during the [license agreement's ('PLA')]" effective period. (*Id.* at 5-6) Instead, IV argues, Nokia Mobile Phones (U.K.) Limited – a subsidiary of Nokia – owned the '073 patent during all relevant times. (*See id.* at 4, 6)

The Court disagrees with IV's contentions. Although Nokia Mobile Phones (U.K.) Limited owned the '073 patent at all relevant times, the PLA authorized Nokia to license any patent that is owned by "any subsidiary." (D.I. 773 Ex. 4 at TMUSIV1410698-99) (internal punctuation omitted) Thus, Nokia was authorized to license the '073 patent and extended such a license to Ericsson Sweden under the terms of the PLA. (*See* D.I. 821 at 3)

IV next contends that even if a sublicense between Ericsson Sweden and Ericsson USA issued, that sublicense is insufficient to retroactively exhaust IV's infringement claims. (*See* D.I. 809 at 9) In support, IV notes that its claims for patent infringement "matured ... well before Ericsson Sweden attempted to sublicense Ericsson USA" and, hence, cannot be exhausted by the Ericsson Sweden-Ericsson USA sublicense. (*Id.*)

Again, the Court disagrees. The PLA authorized Ericsson Sweden to issue sublicenses to its subsidiaries and provided that any such sublicense "shall be deemed to be effective at the effective date." (D.I. 773 Ex. 4 § 2.5) (internal punctuation omitted) The PLA further defined "effective date" as "the date first mentioned in the [PLA]," that is: May 15, 1997. (*Id.* at

6

TMUSIV1410698) Pursuant to these provisions, Ericsson Sweden granted a *nunc pro tunc* license to Ericsson USA, made retroactive to May 15, 1997. (*Id.* Ex. 2 Ex. 2 at 1) Because the Ericsson Sweden-Ericsson USA sublicense predates the issue date of the '073 patent and covers the '073 patent's entire term, all of Ericsson USA's sales to T-Mobile were authorized. (D.I. 772 at 2) (stating that '073 patent issued on January 2, 2001) Thus, Ericsson Sweden's sublicense with Ericsson USA is sufficient to exhaust IV's infringement claims on a retroactive basis.

Accordingly, the Court will grant T-Mobile's motion.[6]

### C. T-Mobile's Motion that Prosecution History Estoppel Bars IV From Relying on the Doctrine of Equivalents to Establish Infringement of the '0032 Patent

T-Mobile seeks summary judgment that IV is precluded from relying on the doctrine of equivalents to establish infringement of the asserted claims[7] of the '0032 patent because "[e]ach allegedly equivalent limitation . . . was amended during prosecution to overcome . . . prior art."[8] (D.I. 772 at 7) IV counters that prosecution history estoppel does not apply because "the amendment at issue . . . was not narrowing" and "bear[s] no more than a tangential relation to the equivalent in question." (D.I. 809 at 12) (internal quotation marks omitted; alteration in original)

"Estoppel arises when an amendment is made to secure the patent, and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S.

---

[6]For clarity, throughout this opinion when the Court states that it will grant or deny a "motion," the statement is limited to the particular portion of the motion being discussed in the particular section of the opinion.

[7]IV asserts claims 1, 7, and 8 of the '0032 patent against T-Mobile. Claims 7 and 8 depend from independent claim 1. (*See* D.I. 772 at 7)

[8]IV asserts infringement of the '0032 patent only under the doctrine of equivalents. (*See* D.I. 772 at 7; Tr. at 67-68)

7

722, 736 (2002). When presented with a narrowing amendment that was made for reasons related to patentability, the Court must "presum[e] that prosecution history estoppel applies." *EMD Millipore Corp. v. All Pure Techs., Inc.*, 768 F.3d 1196, 1204 (Fed. Cir. 2014). The patentee may then rebut the presumption by establishing one of three exceptions to estoppel: "the equivalent [was] unforeseeable at the time of the application; the rationale underlying the amendment [bore] no more than a tangential relation to the equivalent in question; or there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the [equivalent]." *Festo*, 535 U.S. at 740-41.

At oral argument, IV's counsel agreed that the amendment "was made for purposes of patentability." (Tr. at 79) In the Court's view, the amendment at issue was also narrowing. As T-Mobile observes, the amendment "added . . . [a] mathematical relationship[] between first bit duration ($T_b$) and other parameters."[9] (D.I. 772 at 10) (internal quotation marks omitted) The amendment, therefore, "limited the scope of the claims to *exclude* any method in which the precise mathematical requirements [stated in the amendment] are not satisfied; i.e., any method where the symbol duration is not equal to $KT_b$, the sequence period is not equal to the symbol duration $KT_b$, or the chip duration is not equal to $KT_b/N$." (*Id.* at 11 (emphasis in original); *see also* Tr. at 71) As such, prosecution history estoppel presumptively applies, and it is IV's burden to rebut the presumption by establishing one of three exceptions to estoppel. *See Festo*, 535 U.S. at 740-41.

IV relies on the "tangentiality" exception. (*See* D.I. 809 at 15) In assessing the

---

[9] The other parameters recited in the claims are K, which refers to a plurality of parallel data bit streams, and N, which refers to processing gain. (*See* D.I. 773 Ex. 14 at IVATT0002272)

8

"tangentiality" exception, the Court must "focus[] on the patentee's objectively apparent reason for the narrowing amendment" in the "context in which the amendment was made." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369-70 (Fed. Cir. 2003) (en banc). Tangentiality is demonstrated when "the reason for the narrowing amendment was peripheral, or not directly relevant" to the equivalent in question. *Id.* at 1369. However, if the amendment was "made to avoid prior art that contains the equivalent in question," it is not tangential. *Id.* Instead, the amendment "is central to allowance of the claim." *Id.*

Here, the prosecution history does not support IV's contention that the reason for the amendment was only tangentially related to the equivalent in question. To the contrary, the prosecution history reflects that the applicants made the amendment to distinguish the invention over Filipowsky, a prior art reference that contains the equivalent in question – higher-order symbols. (*See* D.I. 773 Ex. 14 at IVATT0002327 ("The length of the sequences [in the present invention] also remains fixed at $T = KT_b$ in contrast to the Filipowsky system."); *see also id.* at IVATT0002293-94, IVATT0002323 (similarly using $T = KT_b$ to distinguish '0032 patent from Filipowsky); *id.* Ex. 18 col. 4 ll. 50-75, col. 5 ll. 1-17 (Filipowsky disclosing "higher order alphabet systems"); *id.* Ex. 11 at 79-80 (IV's expert, Dr. Moon, stating that, "in essence," IV is relying on doctrine of equivalents "because the claim literally uses binary and because HSDPA uses higher-order symbols")) Thus, IV cannot establish the "tangentiality" exception to prosecution history estoppel and, as such, is precluded from relying on the doctrine of equivalents to establish infringement of the asserted claims of the '0032 patent. *See Festo*, 344 F.3d at 1369 ("[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim.").

IV opposes this conclusion, arguing that prosecution history estoppel "will often turn on underlying questions of fact" and, hence, should not "be resolved before trial." (D.I. 809 at 13; *see also* Tr. at 84) IV further contends that the parties have presented conflicting expert opinions as to whether "the proposed equivalent is tangential to the reason for allowance [of the claim]," warranting a denial of summary judgment. (D.I. 809 at 14) The Court disagrees. "The application of prosecution history estoppel is a question of law." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 99 F.3d 1098, 1107 (Fed. Cir. 1996); *see also Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015) (same). Therefore, "the determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are . . . for the court, not a jury, to decide." *Festo*, 344 F.3d at 1368. Moreover, expert opinions cannot establish tangentiality or the reason for an amendment because "[o]nly the public record of the patent's prosecution, i.e., the patent's prosecution history, can be a basis for [determining the reason for the amendment to the claim]." *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) (internal quotation marks omitted).

Accordingly, the Court will grant T-Mobile's motion.

### D. Defendants' Motion for Non-Infringement of the '793 Patent

Defendants argue that the Court should grant summary judgment of non-infringement of the '793 patent because users' handsets do not retrieve MMS messages "automatically[,] . . . without requiring user interaction," as required by the asserted claims of the '793 patent. (D.I. 772 at 75) (internal quotation marks omitted) Although the handsets permit automatic retrieval, Defendants assert that the handsets also allow for manual retrieval and "can be configured" to

allow for either automatic or manual retrieval.[10] (*Id.*; *see also* D.I. 777 Ex. 80 at 26 (T-Mobile's Products Requirements Document stating that "[t]he mobile station must be set for automatic download of MMS and the user must have the ability to alter this setting"); D.I. 778 Ex. 81 at 106 (IV's expert stating that both automatic and manual download "are supported under the relevant standards" for Sprint's handsets)) Given these options, Defendants contend that any "automatic retrieval by . . . Defendants' subscribers is [not] attributable to Defendants" because "subscribers can choose to use manual retrieval at any time." (D.I. 772 at 75, 77; *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) (stating that "liability under § 271(a) can also be found" when "a third party's actions are attributed to the alleged infringer"))

IV counters that Defendants infringe the asserted claims of the '793 patent "without any user interaction" because Defendants' phones are "shipped . . . with the automatic download feature activated." (D.I. 809 at 68-69; *see also* D.I. 811-49 Ex. 49 at 35 (T-Mobile's Product Requirements Document stating that "[t]he mobile station shall be set for automatic download and the user shall not have the ability to alter this setting"); D.I. 811-23 Ex. 23 at 7 (stating that Sprint's Picture Mail application automatically downloads "MMS message[s] without any user interaction") (internal quotation marks omitted)) Thus, in IV's view, Defendants' phones are "configur[ed] . . . to infringe as soon as they are turned on." (D.I. 809 at 69) Finally, to the extent that user interaction is required to perform the claimed method, IV argues that Defendants' subscribers' actions are directly attributable to Defendants, because Defendants "condition the

---

[10]IV does not assert manual retrieval as a basis for infringement. (*See generally* D.I. 809 at 70; Tr. at 62-63)

benefit of automatic MMS retrieval on the performance of the claimed method and establish the manner and timing of ... performance" by "requir[ing] that the phones be set [to] automatically download MMS service messages by default." (*Id.* at 71-72; *see also* Tr. at 61)

"The sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)." *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003). Thus, Defendants cannot directly infringe the asserted claims of the '793 patent simply by selling phones that allow for automatic retrieval. However, "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023. "In those instances, the third party's actions are attributed to the alleged infringer such that the alleged infringer becomes the single actor chargeable with direct infringement. Whether a single actor directed or controlled the acts of one or more third parties is a question of fact." *Id.*

Here, the record demonstrates genuine disputes of material fact as to whether automatic retrieval, as performed by Defendants' subscribers, is attributable to Defendants for purposes of infringement. A reasonable jury could find, as Defendants contend, that "automatic retrieval [performed] by ... Defendants' subscribers is [not] attributable to Defendants" because Defendants allow subscribers to perform manual retrieval at any time. (D.I. 772 at 77; *see also* D.I. 777 Ex. 80 at 26 (stating that T-Mobile's users "must have the ability to alter this setting," i.e., automatic retrieval)) By contrast, a reasonable jury could also find, as IV asserts, and consistent with *Akamai*, that subscribers' actions are directly attributable to Defendants because Defendants "condition the benefit of automatic MMS retrieval on the performance of the claimed

method and [also] establish the manner and timing of . . . performance" through setting automatic retrieval as a default. (D.I. 809 at 71; *see also* D.I. 811-49 Ex. 49 at 35 (stating that T-Mobile's users "shall not have the ability to alter this setting," i.e., automatic retrieval)) The record contains sufficient evidence from which a reasonable jury could find for either Defendants or IV on this dispute (i.e., IV's *Akamai* theory of infringement), making summary judgment of non-infringement unwarranted. (*See, e.g.*, D.I. 777 Ex. 80 at 26; D.I. 778 Ex. 81 at 106; D.I. 811-49 Ex. 49 at 35; D.I. 811-23 Ex. 23 at 7)

Accordingly, the Court will deny Defendants' motion.

## IV. CONCLUSION

An appropriate Order follows.